UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――――

VERONICA RUTH SEIGNIOUS,

                      Plaintiff,       **No. 6:15-cv-06065(MAT)**
                                             **DECISION AND ORDER**

               -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                      Defendant.
―――――――――――――――――――――――――――

## I.   Introduction

Veronica Ruth Seignious ("Plaintiff"), represented by counsel, brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## II.  Procedural Status

Plaintiff, a former nurse's assistant, protectively filed claims for DIB and SSI on March 7, 2011, alleging disability beginning November 9, 2010, due to knee and back pain, bilateral knee osteoarthritis, depression, and difficulty sleeping. See T.153-60, 182.[1] After both claims were denied, T.92-101, Plaintiff

---

[1]
    Numerals preceded by "T." refer to pages from the certified transcript of the administrative record, submitted by the Commissioner in connection with her answer to the complaint.

filed a request for an administrative hearing. T.104. On November 16, 2012, Plaintiff and her attorney appeared at a hearing before administrative law judge Michael W. Devlin ("the ALJ"). T.35-59. Peter Manzi, D. Ed., a vocational expert, also appeared and testified. T.35-59. On March 15, 2013, the ALJ issued a decision finding that Plaintiff became disabled on February 5, 2012, but had not been under a disability at any time through March 31, 2011, the date last insured. T.14-28. Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review on December 9, 2014, making the ALJ's decision the final decision of the Commissioner. T.1-6. This timely action followed.

The parties have cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court adopts and incorporates by reference herein the undisputed factual recitations contained in the parties' briefs. The Court will discuss the record evidence in further detail below, as necessary to the resolution of the parties' contentions. For the reasons discussed below, the Court reverses the Commissioner's decision and remands the matter for calculation and payment of benefits.

## III. The ALJ's Decision

The ALJ applied the well-established five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. §§ 404.1520(a), 416.920(a). At

step one, the ALJ found that Plaintiff met the insured status requirements of the Act through March 31, 2011, her date last insured ("DLI").

At step two, the ALJ found that Plaintiff has had the following severe impairments: arthritic pain in both knees, more severe on the right; obesity; and major depression, severe, with psychotic features. He found that Plaintiff has the following non-severe impairments: methadone dependence, lower back pain, and right shoulder pain.

At step three, the ALJ considered Listing 1.02 (major dysfunction of a joint) and determined that Plaintiff's degenerative joint disease does not meet that Listing's requirements because there are no findings of joint space narrowing, bony destruction, or ankylosis of the affected joint. The ALJ found no evidence of involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle) resulting in an inability to ambulate effectively, or involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist/hand) resulting in an inability to perform fine and gross movements effectively. The ALJ further found that Plaintiff did not meet the requirements of any mental disorder in the Listing of Impairments, although he did not specify which particular mental disorder listings he considered.

The ALJ then proceeded to assess Plaintiff as having the residual functional capacity ("RFC") to perform less than the full range of sedentary work. She is able to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk at least 2 hours and sit for about 6 hours in an 8-hour day; and she must be allowed to use an assistive device to ambulate. She is able to push and/or pull 10 pounds occasionally; climb ramps and stairs and stoop occasionally; can rarely balance, kneel, crouch or crawl; can never climb ladders, ropes or scaffolds; and can frequently reach and handle with the dominant right upper extremity. She can understand, remember and carry out simple instructions and tasks; can occasionally interact with co-workers and supervisors; can have little to no contact with the general public; is able to work in a low-stress environment (e.g., no supervisory duties, no independent decision-making required, no strict production quotas, minimal changes in work routine); and can consistently maintain concentration and focus for up to 2 hours at a time.

At step four, the ALJ determined that Plaintiff became a person closely approaching advanced age on February 5, 2012; has a limited education; and is unable to perform her past relevant work as a nurse's assistant.

At step five, considering Plaintiff's RFC, age, education, and work experience, and the VE's testimony, the ALJ concluded that,

prior to February 5, 2012, she was capable of making a successful adjustment to other work and could perform the requirements of representative jobs such as Table Worker (DOT #739.687-182, unskilled, svp of 2, sedentary) and Addresser (DOT #209.587-010, unskilled, svp of 2, sedentary). After February 5, 2012, when Plaintiff's age category changed, the ALJ relied on Medical-Vocational Rule 201.10 to find that Plaintiff became disabled on that date. In sum, Plaintiff was not disabled at any time through March 31, 2011, the DLI, but became disabled on February 5, 2012.

## IV.  Scope of Review

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, a district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)). "Failure to apply

the correct legal standards is grounds for reversal." <u>Townley</u>, 748 F.2d at 112.

**V.    Discussion**

    **A.    RFC Not Supported by Substantial Evidence**

        **1.    Physical RFC Inconsistent with Consultative Physician's Report**

Plaintiff argues that the physical limitations in the RFC assessment are not supported by substantial evidence because they are inconsistent with the medical opinions and medical evidence in the record, particularly the report of consultative physician Dr. Harbinder Toor, who examined Plaintiff on July 26, 2011, at the Commissioner's request. <u>See</u> T.449. Dr. Toor diagnosed Plaintiff with the following: history of arthritic pain in the knees, more severe in the right than the left; history of obesity; history of lower back pain; history of pain in the right shoulder; history of hypertension. T.451. Dr. Toor indicated that Plaintiff's prognosis was "guarded." For his medical source statement, Dr. Toor opined that Plaintiff has "moderate to severe limitations in standing, walking, sitting, bending, and lifting" and "mild to moderate limitations pushing, pulling, and reaching because of pain in the right shoulder." T.451. He added that "[p]ain interferes with her daily physical routine and balance." <u>Id.</u>

The ALJ gave "significant weight" to Dr. Toor's opinion, which he found to be "generally consistent with the medical evidence of record." Plaintiff agrees that Dr. Toor's opinion was consistent

-6-

with the medical evidence, but argues that it was wholly inconsistent with the ability to perform sedentary-level work. In particular, Plaintiff points to Dr. Toor's assignment of "moderate to severe" limitations in sitting, standing, walking, bending, and lifting, and argues that such restriction on sitting and standing, in particular, are incompatible with sedentary work. The Commissioner's regulations state that "[a]lthough a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally[2] and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.927(a). As the Second Circuit has recognized, "the concept of sedentary work contemplates substantial sitting." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (citing Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638, 643 (2d Cir. 1983)); see also SSR 96-9P, 1996 WL 374185, at *3 (In a full range of sedentary work, "[s]itting would generally total about 6 hours of an 8-hour workday."). Thus, "[t]he ability to sit for prolonged periods is an essential inquiry in determining whether a claimant has the residual functional capacity to perform sedentary work." Koseck v. Sec'y of Health and Human Servs., 865 F.

---

[2]    "'Occasionally' means occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday." Social Security Ruling ("SSR") 96-9P, 1996 WL 374185, at *3 (S.S.A. July 2, 1996).

Supp. 1000, 1013 (W.D.N.Y. 1994) (citing <u>Ferraris</u>, 728 F.2d at 586-87).

The Commissioner argues that Dr. Toor's assessment of "moderate to severe" limitations in sitting does not conflict with the ALJ's RFC formulation because even if Plaintiff needed to take several breaks or alternate position, this would not preclude the performance of sedentary work. <u>See</u> Def's Mem. at 22-23 (citation omitted). It is true that, as the Commissioner points out, the "regulations do not mandate the presumption that all sedentary jobs . . . require the worker to sit without moving for six hours," <u>Halloran v. Barnhart</u>, 362 F.3d 28, 33 (2d Cir. 2004). However, Dr. Toor also assigned moderate-to-severe limitations with regard to Plaintiff's ability to stand and walk. T.451. Thus, Dr. Toor's opinion does not offer evidence that Plaintiff's "moderate to severe" limitations in sitting could be ameliorated by alternating between positions, as suggested by the Commissioner; Dr. Toor opined that she was equally limited in all of the positions among which she could alternate. Furthermore, the ALJ did not include the ability to take breaks or alternative between positions in his RFC assessment.

Finally, Dr. Toor's evaluation of "moderate to severe" limitations is too vague, on its face, to constitute substantial evidence supporting the ALJ's conclusion that Plaintiff can perform the exertional requirements of sedentary work. <u>See</u>, <u>e.g.</u>,

-8-

<u>Richardson v. Astrue</u>, 2011 WL 2671557, at *12 (S.D.N.Y. July 8, 2011) ("Consulting Dr. Tsinis's conclusion that Richardson's ability to sit was 'mildly to moderately' impaired provides no support for ALJ Tannenbaum's conclusion that Richardson could perform sedentary work. Dr. Tsinis' finding is so vague as to render it useless in evaluating whether Richardson could perform sedentary work.") (citing <u>Curry v. Apfel</u>, 209 F.3d 117, 123 (2d Cir. 2000), <u>superceded by regulation on other grounds by</u> 20 C.F.R. § 404.1560(c)(2)); other citations and footnote omitted)). The ALJ apparently assumed, without explanation, that Plaintiff's limitations fell on the "moderate" end of the spectrum of "moderate to severe" limitations assessed by Dr. Toor. However, courts have found that even "moderate" limitations raise questions as to a claimant's ability to perform prolonged sitting or standing, <u>e.g.</u>, <u>Malone v. Comm'r of Soc. Sec.</u>, No. 08-CV-1249 GLS/VEB, 2011 WL 817448, at *10 (N.D.N.Y. Jan. 18, 2011) ("At a minimum, an assessment of moderate limitation suggests a possibility that prolonged standing might pose a problem."))[3] and Dr. Toor's clinical findings were not within normal limits. Plaintiff was observed to be "in moderate to severe pain." She could not "stand

---

[3]

See also Arzu v. Colvin, No. 14 Civ. 2260(JCF), 2015 WL 1475136, at *12 (S.D.N.Y. Apr. 1, 2015) ("Moderate sitting, walking, and standing limitations could prevent one from standing and walking up to two hours in an eight-hour day. And in this case, a 'moderate' limitation does not clearly contradict Dr. Stanley's prior determination that Mr. Arzu could only walk for 20 minutes in an eight-hour day. Accordingly, Dr. Edynak's opinion is not substantial evidence for a finding that Mr. Arzu has the residual functional capacity to perform sedentary work.").

more than a few minutes without the cane" prescribed by her doctor, which was "need[ed] . . . medically for standing and walking because of pain." T.450. Dr. Toor observed that she had an abnormal gait, in that she limped toward the right side with and without her cane. She declined to heel-to-toe walk and squat due to pain. T.450. She also declined to lie down on the exam table due to pain, and had "difficulty getting out of the chair." T.450. She experienced "slight difficulty changing for exam because of pain in the right shoulder." T.450. Dr. Toor stated that Plaintiff had restricted range of motion in her right shoulder and lumbar spine, and she declined to perform either the sitting or supine straight-leg-raise test due to pain. T.450-51. Plaintiff declined to perform movements of the hips because of pain. She had restriction of movement of the right knee with pain, tenderness, and swelling; the left knee had a normal range of motion but tenderness. T.451. Dr. Toor's medical source statement finding "moderate to severe" limitations across all postural positions, combined with his abnormal clinical findings, is not substantial evidence for the ALJ's finding that Plaintiff can perform sedentary work.

### 2.   Mischaracterization of the Record

Plaintiff argues that the ALJ erroneously relied on various misstatements of the facts in order to support his RFC finding.

It is well-settled that while an ALJ need not "mention[] every item of testimony presented" or "reconcile explicitly every

conflicting shred of medical testimony," Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983) (per curiam), the ALJ may not ignore or mischaracterize evidence of a person's alleged disability. See Ericksson v. Comm'r of Soc. Sec., 557 F.3d 79, 82–84 (2d Cir. 2009) (mischaracterizing evidence); Kohler v. Astrue, 546 F.3d 260, 269 (2d Cir. 2008) (overlooking and mischaracterizing evidence).

As the first example of the ALJ's mischaracterization of the record, Plaintiff points to the ALJ's reliance on her statement that she once worked as a bell-ringer for the Salvation Army, which required her to stand. According to the ALJ, this demonstrated "she was able to do the work" and thus contradicted her testimony that her pain was exacerbated by standing. T.25.  However, the ALJ ignored the fact that Plaintiff's statement was made during a visit to the emergency room to obtain treatment for her knee pain, which had been aggravated by the standing she was doing while working as a bell-ringer. See T.504 (Plaintiff told hospital staff that "all the standing [was] killing [her]!"). Rather than demonstrating an ability to engage in full-time sedentary employment, the statement corroborates Plaintiff's testimony that her knee pain was exacerbated by standing.

As the second example of the ALJ's mischaracterization of the record, Plaintiff cites the ALJ's statements that "[n]othing in the record suggest[ed] that her doctor advised her not to do the work," and "[t]he record does not contain any opinions from physicians who

treated [her] . . . indicating that [she] [was] disabled or even [had] limitations greater than those determined in this decision." T.25. However, any opinions by Plaintiff's treating physicians that she was "disabled" would have been disregarded by the ALJ on the basis that the ultimate issue of disability is reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); see also, e.g, Taylor v. Barnhart, 83 F. App'x 347, 349 (2d Cir. 2003) (unpublished opn.) ("Dr. Desai's opinion that Taylor was 'temporarily totally disabled' is not entitled to any weight, since the ultimate issue of disability is reserved for the Commissioner.") (citations omitted). Furthermore, the ALJ's statement is contrary to the record. For instance, on January 24, 2012, treating orthopedist Michael Colucci, M.D. affirmatively stated that Plaintiff "would certainly qualify for some level of disability regarding her knee arthritis." T.665. On June 30, 2010, treating physician Mark Mirabelli, M.D., completed a Physical Assessment for Determination of Employability for the Monroe County Department of Human Services indicating that Plaintiff was disabled for a one-month period due to bilateral knee pain, right-sided osteoarthritis and meniscal tear, and left-sided osteoarthritis and suspected meniscal tear. T.464. Camille Good, RPA-C, completed the same county social services disability form on November 29, 2010, stating that Plaintiff was disabled for "3-6 months pending ortho recommendation." T.471.

Thus, the ALJ's supporting rationale for his physical RFC assessment was based on several mischaracterizations of the record, thereby rendering the RFC assessment legally flawed and unsupported by substantial evidence. See Ellis v. Colvin, 29 F. Supp.3d 288, 302 (W.D.N.Y. 2014) ("It was plainly improper for the ALJ to bolster his own RFC assessment with a blatant misstatement of the record.") (citing, inter alia, Richardson v. Barnhart, 443 F. Supp.2d 411, 421 (W.D.N.Y. 2006) ("The ALJ's statement that 'Dr. Donahue has provided no objective medical evidence to support her statement of disability,' is a gross mischaracterization of the contents of the record. The ALJ's mischaracterization is indicative that his analysis is not based upon substantial evidence.")).

### 3. Mental RFC Not Based on Substantial Evidence

The ALJ here assigned "some weight," see . T.25, to the opinions of both the State agency review psychologist, Dr. T. Harding, and Plaintiff's therapist, John Mele, Licensed Mental Health Counselor ("LMHC Mele"), who treated Plaintiff for major depression, severe, with psychotic features.

State agency review psychologist Dr. Harding, on the Psychiatric Review Technique form, indicated that his assessment covered "from: [blank space] to past 03/31/11 [the date last insured]." T.431. However, he then stated there was "[i]nsufficient [e]vidence" to make a medical disposition, T.431, and left the remainder of the Psychiatric Review Technique form blank. T.432-44.

-13-

Thus, Dr. Harding apparently failed to issue an opinion on Plaintiff's mental RFC from the onset date (November 9, 2010) to March 31, 2011 (the date last insured). Also on July 13, 2011, Dr. Harding completed a Mental Residual Functional Capacity Assessment and indicated that it was a "Current Evaluation" (as opposed to an evaluation covering "Date Last Insured" or "12 Months After Onset"). T.445. Dr. Harding found that Plaintiff was either "[n]ot [s]ignificantly [l]imited" or "[m]oderately [l]imited" in the various abilities pertaining to Understanding and Memory, Sustained Concentration and Persistence, Social Interaction, and Adaptation. T.445-46. For the narrative Functional Capacity Assessment, Dr. Harding simply quoted snippets from several of Plaintiff's medical records (e.g., that she was seen in the emergency room for anxiety symptoms and prescribed Ativan) and then concluded that "based on the totality of the evidence in file [she] is found to retain the [RFC] to perform entry level work activities on a sustained basis." T.447. Despite acknowledging that "Dr. Harding found that there was insufficient evidence in the file to reach a conclusion regarding the claimant's mental health," the ALJ inexplicably relied on Dr. Harding's conclusion regarding Plaintiff's mental limitations. This flies in the face of the ALJ's "affirmative obligation to develop a claimant's medical history" when he perceives "clear gaps" or "deficiencies" in the record.

-14-

E.g., Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) (citations omitted).

The ALJ also assigned "some weight" to treating therapist LMHC Mele's January 28, 2011, Psychological Assessment for Determination of Employability, T.281-84, in which he opined that Plaintiff was unable to participate in any activities except treatment or rehabilitation for a period of 12 months. T.283. LMHC Mele stated that due to her severe major depressive disorder with psychotic features, she displayed symptoms of, inter alia, memory loss, self-isolation, sleep disturbance, decreased interest in activities, feelings of guilt and worthlessness, hopelessness, poor concentration and memory, and auditory and visual hallucinations. LMHC Mele indicated that he had treated Plaintiff over the course of 24 sessions, but she had not improved as the result of that treatment. Instead, she has "gone into much more than mild depression [and is showing] decompensation." T.282. LMHC Mele opined that Plaintiff, inter alia, was "[m]oderately" to "[v]ery [l]imited" in the ability to follow, understand and remember simple instructions and directions and perform low stress and simple tasks; and "[v]ery [l]imited" in the ability to perform simple and complex tasks independently; maintain attention and concentration for rote tasks; and regularly attend to a routine and maintain a schedule. T.283.

Clearly, the opinions of therapist LMHC Mele and the State agency review psychologist Dr. Harding are not at all consistent with each other. Nevertheless, the ALJ assigned both opinions "some weight" without indicating which portions of which source's opinion were entitled to "some weight". Without such an explanation, the ALJ's equal weighting of these opinions is irreconcilable because they reached widely different conclusions. This is an error warranting remand. See Rozler o/b/o AERS v. Colvin, No. 1:12-CV-1000(MAT), 2014 WL 7358708, at *7 (W.D.N.Y. Dec. 23, 2014) ("Because the Court cannot discern the rationale for the ALJ's assignment of weight to Dr. Meyer's opinion, remand is necessary.") (citing Berry v. Schweiker, 675 F.2d 464, 468-69 (2d Cir. 1982)).

Dr. Harding's report, as discussed above, is vague, confusing, and incomplete because he found insufficient evidence in the record to make a conclusion regarding Plaintiff's mental health. It cannot constitute substantial evidence to support the ALJ's decision. That leaves LMHC Mele's assessment as the only opinion regarding Plaintiff's mental RFC. Although the ALJ indicated that he gave it "some weight," it is clear that he adopted Dr. Harding's report instead.

The Court acknowledges that LMHC Mele was an "other source" rather than an "acceptable medical source," and therefore his opinion was not presumptively entitled to controlling weight. See

SSR 06-03p, 2006 WL 2329939, at *2-3 (S.S.A. Aug. 9, 2006).
Nonetheless, SSR 06-03p directs that opinions from "other sources"
such as LMHC Mele are "important" and "should be evaluated on key
issues such as impairment severity and functional effects, along
with the other relevant evidence in the file." SSR 06-03p, 2006 WL
2329939, at *3. "SSR 06-03p further directs ALJs to use the same
factors for the evaluation of the opinions of 'acceptable medical
sources' to evaluate the opinions of 'medical sources who are not
"acceptable medical sources,"' such as licensed social workers."
Canales v. Comm'r of Soc. Sec., 698 F. Supp.2d 335, 344 (E.D.N.Y.
2010) (quoting SSR 06-03p, 2006 WL 2329939, at *4; citing 20 C.F.R.
§ 404.1527(d) (Commissioner's regulations on the weighing of the
medical opinions of treating sources)). The ALJ paid lip-service to
this guideline by acknowledging LMHC Mele's treatment relationship
with Plaintiff, which consisted of 24 counseling sessions.
Nonetheless, he then discounted LHMC Mele's opinion because he
found it inconsistent with the Global Assessment of Functioning
("GAF") score of 53 assigned by LHMC Mele. T.25. Courts in this
Circuit have noted that GAF scores are of little probative value in
the disability context because they do "'not have a direct
correlation to the severity requirements in [the Commissioner's]
disorders listings.'" Daniel v. Astrue, No. 10-CV-5397(NGG), 2012
WL 3537019, at *10 (E.D.N.Y. Aug. 14, 2012) (quoting Revised
Medical Criteria for Evaluating Mental Disorders and Traumatic

-17-

Brain Injuries, 65 Fed. Reg. 50746, 50764-5 (S.S.A. 2000)). Moreover, a GAF of 53 is not necessarily inconsistent with disabling limitations. See id. ("Dr. Corley's GAF score of 55, while relevant, does not contradict his ultimate finding that Daniel was disabled and unable to work[.]") (citation omitted). Apart from the alleged inconsistency with a GAF score, the only reason for not giving more weight to LMHC Mele's opinion was that he was not an "acceptable medical source." This was error. See, e.g., Canales, 698 F. Supp.2d at 344-45 (E.D.N.Y. 2010) (finding error where ALJ "disregarded [licensed social worker]'s opinion simply because it was the opinion of a social worker, not on account of its content or whether it conformed with the other evidence in the record"; remanding for consideration of opinion with an explanation that complies with the requirements of SSR 06-03p).

## VI. Remedy

Under 42 U.S.C. § 405(g), the district court has the power to affirm, modify, or reverse the ALJ's decision with or without remanding for a rehearing. The standard for directing a remand for calculation of benefits is met when the record persuasively demonstrates the claimant's disability, Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980), and where there is no reason to conclude that the additional evidence might support the Commissioner's claim that the claimant is not disabled, Butts v. Barnhart, 388 F.3d 377,

385–86 (2d Cir. 2004). That standard is easily met here, as discussed above. Reversal for calculation of benefits is particularly appropriate because Plaintiff's benefits claim has been pending for almost five years, and additional administrative proceedings would only lead to further delay. See, e.g., Carroll, 705 F.2d at 644 (reversal without remand for additional evidence particularly appropriate where payment of benefits already delayed for four years and remand would likely result in further lengthening the "painfully slow process" of determining disability).

## VII. Conclusion

For the foregoing reasons, the Court finds that the Commissioner's determination was erroneous as a matter of law and was not supported by substantial evidence. Accordingly, Defendant's Motion for Judgment on the Pleadings (Dkt #7) is denied, and Plaintiff's Motion for Judgment on the Pleadings (Dkt #5) is granted. The Commissioner's decision is reversed, and the matter is remanded solely for calculation and payment of benefits from the disability onset date of November 9, 2010, to February 5, 2012.

SO ORDERED.

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:     January 8, 2016
           Rochester, New York